UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF INDIANA
INDIANAPOLIS DIVISION

RENEE S. MAJORS,                    )
                                    )
          Plaintiff,                )
     vs.                            )          1:10-cv-01731-LJM-MJD
                                    )
GENERAL ELECTRIC COMPANY,           )
                                    )
          Defendant.                )

**ORDER ON DEFENDANT'S MOTION FOR SUMMARY JUDGMENT**

Pending before the Court is defendant's, General Electric Company ("Defendant"),

Motion for Summary Judgment [Dkt. No. 38].   Plaintiff, Renee S. Majors ("Plaintiff"),

contends that Defendant engaged in employment discrimination in violation of Title VII of

the Civil Rights Act of 1964 ("Title VII"), 42 U.S.C. § 2000e, *et seq.*, and the Americans with

Disabilities Act ("ADA"), 42 U.S.C. § 12101, *et seq.*  The Court has considered the parties'

arguments and **GRANTS** Defendant's Motion [Dkt. No. 38].


**I.  BACKGROUND**

**A.  DEFENDANT'S BLOOMINGTON PLANT OPERATIONS**

Defendant manufactures side-by-side refrigerators at its plant in Bloomington,

Indiana ("Bloomington Plant").  In 2000, over 3,000 employees worked at the Bloomington

Plant.  Majors Dep. at 20.  On January 17, 2008, Defendant announced plans to close the

Bloomington Plant for economic reasons.  *Id.* at 209–10.  Although Defendant ultimately

avoided closing the Bloomington Plant, by 2009 the Bloomington Plant had around

750–800 employees.  Jones Dep. at 17–18.  Today, approximately 600 employees work at the Bloomington Plant.  *Id.*  In 2009, as a cost saving measure, Defendant instituted Loss of Work Days ("LOWs") at the Bloomington Plant, where no production was scheduled and few employees worked.  *Id.* at 46–51.  On LOWs, hourly employees work only if necessary for a particular reason, such as preventative maintenance or rework.  *Id.*

The Bloomington Plant categorizes all of its hourly employees into "cost centers," groups of employees performing similar work.  *Id.* at 18.  Supervisors of the cost centers are known as Business Team Leaders ("BTLs").  *Id.* at 25.  Hourly employees at the Bloomington Plant are represented by the International Brotherhood of Electrical Workers, Local 2249 ("Union").  Majors Dep. at 65.  Terms of their employment are governed by a collective bargaining agreement ("CBA") between Defendant and the Union.  *Id.* at 65–67.

The CBA addresses when hourly employees are eligible for overtime.  It calls for overtime to be equalized "among the employees within a job classification on the same shift in the cost center."  *Id.* Ex. 8 at 18.  BTLs determine what overtime is needed, including the job classifications and employees needed for particular overtime assignments.  Jones Dep. at 25.

The CBA also provides a process for filling vacancies.  When a position becomes open, either on a temporary or permanent basis, employees with the requisite skills and experience may apply.  The eligible bidder with the most seniority is awarded the position.  Karr Dep. at 12.  When job awards are posted, they are simultaneously forwarded to the onsite medical clinic, operated by Concentra, a third party.  *Id.* at 13; Kristoff Dep. at 6–7.  Concentra personnel review the job awards and the applicable employee's medical file to determine whether there are restrictions to be addressed.  Kristoff Dep. at 19–20.

2

Concentra personnel work with Defendant to accommodate employee's restrictions.  *Id.*; Lewellen Dep. at 6–8.  However, if reasonable accommodation is not possible, the senior bidder is classified as "not medically qualified," and the job is given to the next bidder in seniority, who must then pass the same medical review.  Kristoff Dep. at 20.

## B.  PLAINTIFF'S WORK HISTORY

Plaintiff began working for Defendant at the Bloomington Plant on April 25, 1972. Dkt. No. 1 ¶ 10.  In September 2000, Plaintiff suffered a work-related injury to her right shoulder.  Majors Dep. at 45.  This injury resulted in temporary work restrictions, limiting lifting to no more than twenty pounds and precluding work with her right arm above eye-level fully extended.  *Id.* at Ex. 5–7.  By spring of 2001, Plaintiff's medical file indicated that these restrictions were permanent.  *Id.*

From December 2000 to June 2001, Plaintiff worked as a Purchase Materials Auditor ("PMA") at the Bloomington Plant.  *Id.* at 20.  PMAs inspect, perform tests on, and audit a variety of purchased components to determine whether the components conform to engineering specifications and quality standards.  *Id.* at Ex. 2.  The PMA job description requires that the employee engage in "intermittent movement of heavy objects," although it does not define "heavy."  Dkt. No. 44-9 at 8.  Plaintiff concedes that PMAs lift at least some objects weighing more than twenty pounds.  Majors Dep. at 179.

From February 2003 forward, Plaintiff worked as a Quality Control Inspector ("QCI") in Assembly.  *Id.* at 24.  QCIs were responsible for identifying defective parts and bringing them to PMAs.  East Dep. at 11.  The job description for a QCI requires "intermittent movement of heavy objects" and "intermittent work above shoulder level."  Dkt. No. 44-9

3

at 9.  Plaintiff had accommodations in her QCI position, including use of a platform to address her ability to reach over the top of refrigerators and verify the torque applied to screws.  Lewellen Dep. at 14.  Approximately five other people worked as QCIs in other cost centers in the Bloomington Plant.  East Dep. at 9.  In January 2009, Gary Hamilton ("Hamilton") became Plaintiff's BTL.  Jones Dep. at 25.  Amine Karoud ("Karoud") was Plaintiff's BTL from February to July 2009, and then Hamilton again supervised Plaintiff until the end of her employment.  *Id.* at 25, 27.

On May 1, 2009, Defendant posted a temporary PMA opening due to another employee's extended leave of absence.  Karr Dep. at 11.  Plaintiff bid on the position and, as the senior eligible bidder, was awarded the position on May 5, 2009.  *Id.* at 12–13.  Simultaneously, a request was forwarded to Concentra personnel to determine if Plaintiff had medical restrictions that would impact her ability to perform the PMA job.  *Id.* at 13–14; Kristoff Dep. at 19–20.  Toni Kristoff ("Kristoff"), a nurse at the Bloomington Plant clinic employed by Concentra, reviewed Plaintiff's medical file and noted the permanent lifting restriction.  Kristoff Dep. at 20.  Kristoff further noted that the job description required lifting heavy objects.  *Id.*  She followed up with Defendant's Labor Resources Manager, Linda Schneider ("Schneider"), regarding the PMA job's lifting requirements and whether some accommodation might be made for Plaintiff.  *Id.* at 19–20, 27–28.  Kristoff's medical review led to the conclusion that lifting more than twenty pounds was an essential job function of the PMA position and, due to her permanent lifting restriction, Plaintiff was "not medically recommended" for the position.  *Id.* at 28.  Plaintiff was informed that she did not secure the PMA position.

Plaintiff challenged Kristoff's conclusion, informing Defendant that she believed she

could perform the PMA job.  Majors Dep. at Ex. 25.  Defendant conducted further analysis in response.  Kristoff Dep. at 27.  Kristoff, Schneider, and ergonomic technical specialist Ruth Lewellen ("Lewellen") reviewed the job description for the PMA position.  *Id.* at 19–20, 26; Lewellen Dep. at 6–7.  They visited the work area for the position and spoke with PMA Bob East ("East") and PMA manager Tom Jenkins ("Jenkins") about the physical demands of the PMA position.  Lewellen Dep. at 6–9; East Dep. at 17–18.  Both East and Jenkins confirmed that lifting parts and material weighing more than twenty pounds, such as compressors and boxes of screws and door handles, was an essential part of the PMA's job.  Lewellen Dep. at 6–9; Kristoff Dep. at 27–28.  Kristoff, Schneider, and Lewellen also spoke with Plaintiff, who suggested that a stock handler could perform the required lifting. Lewellen Dep. at 10–11; Kristoff Dep. at 29, 51.  Concentra's nurse practitioner, Sharon Crane, reviewed the matter and agreed with Kristoff that Plaintiff could not perform the lifting that was an essential function of the PMA position.   Kristoff Dep. at 43–44. Defendant confirmed Kristoff's prior conclusion that Plaintiff was precluded from the PMA position based on her permanent medical restrictions.  *Id.*; Karr Dep. at 13–14.  The PMA job was awarded to Barry Taylor, the next most senior eligible bidder.  Karr Dep. at 15. Plaintiff filed a grievance with the Union, which was denied by Defendant and not pursued to arbitration.  Majors Dep. at 154.

On May 22, 2009, Plaintiff filed a charge against Defendant with the Equal Employment Opportunity Commission ("EEOC").  Dkt. No. 9-1.  Plaintiff contended that Defendant engaged in sex and disability discrimination against her by denying her the temporary PMA position.  *Id.*  She noted that in a May 19, 2009 meeting with Union representatives, her supervisor Karoud, and Defendant's human resources personnel,

Defendant stated that her work restrictions disqualified her from the position. *Id.* The charge listed May 7, 2009 as the onset date of discrimination. *Id.*

In the summer of 2009, pursuant to the CBA, Defendant made available a Special Early Retirement Option ("SERO") to employees across the United States who had at least twenty-five years of service and were fifty-five or older. Jones Dep. at 42–43. SERO applications were due by August 31, 2009, and those electing to take SERO had the option to retire on either October 1, 2009 or November 1, 2009. Myers Dep. at 10. On August 24, 2009, Plaintiff submitted a SERO application with a November 1, 2009 retirement date. Majors Dep. at 188–90. She completed the other required paperwork in late October 2009. By electing for SERO retirement, Plaintiff was able to retire and keep her health insurance, as well as receive an additional $1,056.00 per month in pension benefits through age sixty-five. Myers Dep. at 13–14. Plaintiff asserts that she retired under "distress." Majors Dep. at 190–92.

In October 2009, Defendant posted an opening for a permanent PMA position. Karr Dep. at 11. At this time, Plaintiff already had submitted her SERO application, and her QCI position had been posted for bidding. *Id.* at 6–7. Nonetheless, Plaintiff was the senior eligible bidder for the permanent PMA position and awarded the position. *Id.* at 14. The job award was forwarded to the clinic to ensure conformity with Plaintiff's restrictions. *Id.* at 13–14. Kristoff, in reviewing Plaintiff's file for the permanent PMA position, noted that neither Plaintiff's physical restrictions nor the physical requirements for the position had changed. Kristoff Dep. at 19–20, 27–29. Because Plaintiff's restrictions prevented her from lifting more than twenty pounds, an essential function of the permanent PMA position, Plaintiff was denied the position, which was awarded to Rodney Ira, the next most senior

6

eligible bidder.  Karr Dep at 14–15.  Plaintiff filed another grievance, which was denied by Defendant and not pursued further by the Union.  Majors Dep. at 206, 209.

On March 30, 2010, Plaintiff filed another discrimination charge with the EEOC.  Dkt. No. 1-1 at 1.  Plaintiff contended that Defendant engaged in sex and disability discrimination in denying her the permanent PMA position.  *Id.*  She also brought a retaliation claim, contending that since filing a 2005 charge for disability discrimination, she had "been continuously denied overtime."  *Id.*  She also claimed retaliation based on her May 2009 EEOC charge.  *Id.*  Lastly, Plaintiff contended that her retirement was a result of the discrimination.  *Id.*  On December 21, 2010, the EEOC terminated processing of the charge and provided Plaintiff with a right to sue notice.  *Id.* at 2.  On December 29, 2010, Plaintiff filed suit in this Court.  Dkt. No. 1.

The Court includes additional facts below as necessary.

## II.  LEGAL STANDARD

As stated by the Supreme Court, summary judgment is not a disfavored procedural shortcut, but rather is an integral part of the federal rules as a whole, which are designed to secure the just, speedy, and inexpensive determination of every action.  *See Celotex Corp. v. Catrett*, 477 U.S. 317, 327 (1986); *see also United Ass'n of Black Landscapers v. City of Milwaukee*, 916 F.2d 1261, 1267–68 (7th Cir. 1990).  Motions for summary judgment are governed by Federal Rule of Civil Procedure 56(a), which provides in relevant part:

> The court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law.

7

Once a party has made a properly-supported motion for summary judgment, the opposing party may not simply rest upon the pleadings but must instead submit evidentiary materials showing that a material fact is genuinely disputed. FED. R. CIV. P. 56(c)(1). A genuine dispute of material fact exists whenever "there is sufficient evidence favoring the nonmoving party for a jury to return a verdict for that party." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 249 (1986). The nonmoving party bears the burden of demonstrating that such a genuine dispute of material fact exists. *See Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586–87 (1986); *Oliver v. Oshkosh Truck Corp.*, 96 F.3d 992, 997 (7th Cir. 1996). It is not the duty of the Court to scour the record in search of evidence to defeat a motion for summary judgment; rather, the nonmoving party bears the responsibility of identifying applicable evidence. *See Bombard v. Ft. Wayne Newspapers, Inc.*, 92 F.3d 560, 562 (7th Cir. 1996).

In evaluating a motion for summary judgment, the Court should draw all reasonable inferences from undisputed facts in favor of the nonmoving party and should view the disputed evidence in the light most favorable to the nonmoving party. *See Estate of Cole v. Fromm*, 94 F.3d 254, 257 (7th Cir. 1996). The mere existence of a factual dispute, by itself, is not sufficient to bar summary judgment, as only factual disputes that might affect the outcome of the suit in light of the substantive law will preclude summary judgment. *See Anderson*, 477 U.S. at 248; *JPM Inc. v. John Deere Indus. Equip. Co.*, 94 F.3d 270, 273 (7th Cir. 1996). Irrelevant or unnecessary facts do not deter summary judgment, even when in dispute. *See Clifton v. Schafer*, 969 F.2d 278, 281 (7th Cir. 1992). If the moving party does not have the ultimate burden of proof on a claim, it is sufficient for the moving

party to direct the court to the lack of evidence as to an element of that claim.  *See Green v. Whiteco Indus., Inc.*, 17 F.3d 199, 201 & n.3 (7th Cir. 1994).  "If the nonmoving party fails to establish the existence of an element essential to [her] case, one on which [she] would bear the burden of proof at trial, summary judgment must be granted to the moving party." *Ortiz v. John O. Butler Co.*, 94 F.3d 1121, 1124 (7th Cir. 1996).

## III.  DISCUSSION

### A.  TITLE VII SEX DISCRIMINATION

Defendant contends that it is entitled to summary judgment on Plaintiff's sex discrimination claim under Title VII.  *See generally* dkt. no. 39 at 10–13; *see also* dkt. no. 1 ¶¶ 34–38.  Plaintiff makes no argument as to sex discrimination in her response to Defendant's Motion.  *See generally* dkt. no. 43.  Failure to develop a legal argument at summary judgment results in waiver of that argument.  *McConnell v. McKillip*, 573 F. Supp. 2d 1090, 1098 (S.D. Ind. 2008) (McKinney, J.).  The Court concludes that Plaintiff has waived her sex discrimination claim and **GRANTS** Defendant's Motion as to this claim.

### B.  ADA DISABILITY DISCRIMINATION[1]

Defendant also contends that it is entitled to summary judgment on Plaintiff's discrimination claim under the ADA.  The ADA prohibits an employer from discriminating against an individual based on disability.  42 U.S.C. § 12112(a).  In order to establish a

---

[1] As the alleged discrimination took place after January 1, 2009, the Court applies the ADA as amended in the ADA Amendments Act of 2008 ("2008 Amendments").  *See Powers v. USF Holland, Inc.*, 667 F.3d 815, 823 n.7 (7th Cir. 2011).

prima facie case of discrimination under the indirect method of proof as set forth in *McDonnell Douglas* and its progeny, Plaintiff must show that at the time of the discrimination she was: (1) a qualified individual with a disability; (2) her work performance met Defendant's legitimate job expectations; (3) she experienced an adverse employment action; and (4) Defendant treated similarly situated non-disabled employees more favorably. *Moser v. Indiana Dep't of Corr.,* 406 F.3d 895, 901 (7th Cir. 2005)*; DeLuca v. Winer Indus.*, 53 F.3d 793, 797 (7th Cir. 1995). If Plaintiff establishes her prima facie case, the burden shifts to Defendant to articulate a legitimate, nondiscriminatory reason for its actions. *DeLuca*, 53 F.3d at 797. If Defendant succeeds, then the burden reverts to Plaintiff to show that there is a genuine dispute of material fact that Defendant's proffered reason for the employment action is pre-textual. *Id.*

Defendant contends that Plaintiff fails to meet the requirements of her prima facie case. To meet the first prong of the *McDonnell Douglas* analysis, Plaintiff must show that she is "an individual with a disability who, with or without reasonable accommodation, can perform the essential functions of the employment position that [she] holds or desires." *Weiler v. Household Fin. Corp.*, 101 F.3d 519, 524 (7th Cir. 1996). The Court examines whether Plaintiff has a "disability" before addressing the reasonable accommodation issue.


## 1.  DISABILITY

Disability in this context is defined as "(a) a physical or mental impairment that substantially limits one or more major life activities of the individual; (b) a record of such an impairment; or (c) being regarded as having such an impairment." 42 U.S.C. § 12102(1). Plaintiff concedes that she does not meet the first definition—that is, she did not have a

physical impairment that substantially limited one or more major life activities at the time Defendant declined to place her in either of the PMA positions.   Dkt. No. 43 at 12. Therefore, the Court examines the evidence to determine whether Plaintiff meets the ADA's definition of disability under either the "record of impairment" or "regarded as" prong.

To meet the definition of disability under the "record of impairment" prong,[2] Plaintiff must show historical evidence of a physical impairment that substantially limited one or more major life activities.  *Davidson v. Midelfort Clinic, Ltd.*, 133 F.3d 499, 510 (7th Cir. 1998).   Plaintiff contends that the September 2000 shoulder injury, at least initially, "substantially limited" lifting, a major life activity.  *See generally* dkt. no. 43 at 10–12. Although lifting is a major life activity, 42 U.S.C. § 12102(2)(A), it is not immediately apparent whether Plaintiff's twenty pound restriction is a substantial limitation.  The term "substantially limited" refers to the inability to perform a major life activity as compared to the average person in the general population or a significant restriction "as to the condition, manner, or duration" under which an individual can perform a particular activity.  *Serednyj v. Beverly Healthcare, LLC*, 656 F.3d 540, 554 (7th Cir. 2011).   An individual is not substantially limited merely because her condition precludes she from completing tasks in her pre-injury job.  *Mack v. Great Dane Trailers*, 308 F.3d 776, 781 (7th Cir. 2002).

Specifically regarding lifting, the Seventh Circuit has stated that "the inability to do heavy lifting is not a substantial limitation as compared to the average person."  *Serednyj*, 656 F.3d at 555 (citing *Zahurance v. Valley Packaging Indus., Inc.*, 397 F. App'x 246, 248

---

[2] Defendant contends that Plaintiff has waived any argument under the "record of impairment" prong by failing to address it in her charge with the EEOC.  Dkt. No. 49 at 9–10.  However, as the Court concludes below that Plaintiff's claim under the "record of impairment" prong fails on the merits, the Court declines to address whether it is procedurally barred.

(7th Cir. 2010) (twenty pound restriction) and *Mays v. Principi*, 301 F.3d 866, 869 (7th Cir. 2002) (ten pound restriction)).  Although Plaintiff has presented precedent from other jurisdictions suggesting that a twenty pound lifting restriction qualifies as a substantial limitation, *see Gallegos v. Swift & Co.*, 237 F.R.D. 633, 643 (D. Colo. 2006), the Court concludes that the Seventh Circuit would disagree.  *See Serednyj*, 656 F.3d at 555; *Zahurance*, 397 F. App'x at 248.  Plaintiff's twenty pound lifting restriction is not a "substantial limitation" under the ADA, and, therefore, Plaintiff cannot show a "record of impairment."

Turning to the "regarded as" prong, Plaintiff may be "regarded as" disabled "because of an actual or perceived physical . . . impairment, whether or not the impairment limits or is perceived to limit a major life activity."  42 U.S.C. § 12102(3).  The definition of disability is broadly construed in "regarded as" cases under the 2008 Amendments, and the focus "should be [on] whether covered entities have complied with their obligations and whether discrimination has occurred, not whether the individual meets that definition of disability." 20 C.F.R. § 1630.1(c)(4); *see also Snyder v. Livingston*, No. 1:11-cv-77, 2012 WL 1493863, at *7 (N.D. Ind. Apr. 27, 2012).  In this case, Defendant regarded Plaintiff as impaired with regards to lifting.  *See, e.g.*, Karr Dep. at 13–14.  The Court concludes that, although Plaintiff does not meet the definition of disability under the actual disability or record of impairment standards, there is a genuine issue of material fact as to whether Plaintiff meets the "regarded as" standard.

## 2.  REASONABLE ACCOMMODATION

In addition to disability, Plaintiff must also show that she can perform the "essential

12

functions" of the PMA position, with or without reasonable accommodation. *Weiler*, 101 F.3d at 524. In determining the essential functions of a position, the Court considers a number of factors, including the employer's judgment, written job descriptions, the amount of time spent on the function, the consequences of not requiring the function, and the work experiences of those performing the job. *Rooney v. Koch Air, LLC*, 410 F.3d 376, 382 (7th Cir. 2005). The Court should not second-guess the employer's determination of the essential functions of a given position. *Lloyd v. Swifty Transp., Inc.*, 552 F.3d 594, 601 (7th Cir. 2009). Defendant contends that lifting objects weighing over twenty pounds, such as compressors and boxes, is an essential function of the PMA position and provides evidence to that effect. Kristoff Dep. at 28. The Court concludes that lifting objects weighing more than twenty pounds is an essential function of the PMA position. Therefore, the remaining question is whether Plaintiff could lift objects weighing more than twenty pounds with or without reasonable accommodation.[3]

Plaintiff contends that the medical records in Defendant's possession were inaccurate and her lifting was not actually restricted. In effect, Plaintiff asserts that ignoring the restrictions in her file would qualify as reasonable accommodation. However, it is well established that the ADA does not require an employer to disregard documented, uncontroverted medical restrictions; indeed, to do so could open the employer up to separate ADA liability for failure to abide by restrictions. *See Dvorak v. Mostardi Platt Assocs., Inc.*, 289 F.3d 479, 484–85 (7th Cir. 2002); *see also Staszak v. Kimberly-Clark Corp.*, No. 01-C-3631, 2002 WL 1858788, at *3 (N.D. Ill. Aug. 12, 2002). Plaintiff provided

---

[3] Defendant contends that, under the "regarded as" prong of the disability determination, no reasonable accommodation is necessary. Dkt. No. 39 at 17. However, as discussed below, Plaintiff's proposed accommodations are not "reasonable" as a matter of law.

13

nothing to Defendant indicating any removal of the restrictions.  Majors Dep. at 104, 107, 279–80.  Without contrary evidence, Defendant was well within its right not to permit Plaintiff to perform work outside of her medical restrictions.  *Cf. Moore v. J.B. Hunt Transp., Inc.*, 221 F.3d 944, 954 (7th Cir. 2000) (approving of reliance on medical records providing specific restrictions).

Alternatively, Plaintiff contends that having another employee "help" with the heavy lifting would be a reasonable accommodation.  However, an employer is not required to have another employee complete essential functions of a position—in effect, to eliminate certain essential job functions—in the name of reasonable accommodation.  *Cochrum v. Old Ben Coal Co.*, 102 F.3d 908, 912 (7th Cir. 1996); *see also Povey v. City of Jeffersonville*, 2011 WL 1085343, at *8 (S.D. Ind. Mar. 21, 2011) (Young, C.J.).  Lifting more than twenty pounds is an essential function of the PMA position, and having another person engage in that lifting in Plaintiff's place is not reasonable accommodation.  *See Sch. Bd. of Nassau Cnty., Fla. v. Arline*, 480 U.S. 273, 287 n.17 (1987).

Although employers must engage in an interactive process to discuss reasonable accommodations for disabled employees, Plaintiff still bears the burden of showing that a reasonable accommodation is possible.  *Rehling v. City of Chi.*, 207 F.3d 1009, 1015–16 (7th Cir. 2000).  Plaintiff has made no such showing.  Therefore, the Court concludes that Plaintiff is not a qualified individual and, consequently, cannot prove her prima facie case.[4]  *DeLuca*, 53 F.3d at 797.  Defendant is **GRANTED** summary judgment on this claim.

---

[4]  Plaintiff devotes numerous pages summary judgment briefing arguing that Defendant's actions were pretextual.  *See* dkt. no. 43 at 14–17.  However, as she fails to make her prima facie case, no pretext inquiry is necessary.  *DeLuca*, 53 F.3d at 797.

14

## C.  RETALIATION

Next, Defendant seeks summary judgment on Plaintiff's retaliation claim.  In its challenge, Defendant contends that part of Plaintiff's claim is procedurally barred and the rest fails on the merits.  The Court addresses Defendant's procedural concerns before turning to the merits of Plaintiff's allegations.

### 1.  PROCEDURAL CONCERNS

Claims under both the ADA and Title VII, including retaliation claims, are limited by the initial allegations made the EEOC, and Plaintiff may not bring allegations in a complaint to the Court that were not previously before the EEOC.  *Kirk v. Fed. Prop. Mgmt.*, 22 F.3d 135, 139 (7th Cir. 1994).  Although Defendant admits that Plaintiff included allegations regarding denial of overtime in her EEOC charge, Defendant contends that Plaintiff's allegations regarding LOWs are outside the scope of Plaintiff's EEOC charges and thus barred.  However, Plaintiff has brought forth evidence suggesting that on March 30, 2010, she sent a supplemental fax to the EEOC including allegations regarding LOWs.  *See* dkt. no. 44-2 at 4–5.  Viewing the evidence in the light most favorable to Plaintiff, the non-moving party, *see Estate of Cole*, 94 F.3d at 257, the Court concludes that allegations regarding LOWs are within the scope of Plaintiff's EEOC charge and may be considered here.  *Accord Kirk*, 22 F.3d at 139.

In addition to challenges as to the scope of Plaintiff's EEOC charges, Defendant contends that claims for any conduct occurring before June 3, 2009, are time barred.  In Indiana, an employee has 300 days from the date an alleged adverse employment action occurs to file a charge with the EEOC under either Title VII or the ADA.  *Laouini v. CLM*

15

*Freight Lines, Inc.*, 586 F.3d 473, 475 (7th Cir. 2009).  Claims brought outside of this time window are time barred.  *Nat'l R.R. Passenger Corp. v. Morgan*, 536 U.S. 101, 109 (2002). Plaintiff contends that, to the extent Defendant's conduct occurred before June 3, 2009, the continuing violation doctrine still permits her claims.  Dkt. No. 43 at 23–24.   Although Plaintiff concedes that *Morgan* precludes application of the continuing violation doctrine in most cases, she contends that this a "pattern and practice case" not covered by *Morgan* preclusion.  *See Morgan*, 536 U.S. at 115 n.9.  However, the Court concludes that this is not a pattern and practice case, which requires evidence that an employer "regularly and purposefully discriminates" against a protected group.  *Puffer v. Allstate Ins. Co.*, 675 F.3d 709, 716 (7th Cir. 2012).  There is no evidence to suggest that any alleged discrimination applied to women throughout Defendant's workforce.  Therefore, the Court concludes that Plaintiff is bound by the 300 day limit.  *See Laouini*, 586 F.3d at 475.  Plaintiff filed her last EEOC charge on March 30, 2010, dkt. no. 1-1 at 1, and any claim based on conduct occurring more than 300 days prior to that—in other words, before June 3, 2009—is time barred.

16

2.  MERITS

Turning to the merits of Plaintiff's claims, Title VII prohibits employers from retaliating against employees for filing charges alleging violations of Title VII.[5]  *Sitar v. Ind. Dep't of Transp.*, 344 F.3d 720, 728 (7th Cir. 2003).  A retaliation claim may survive even if the underlying discrimination claim fails.  *Pantoja v. Am. NTN Bearing Mfg. Corp.*, 495 F.3d 840, 847–49 (7th Cir. 2007).  Plaintiff may prove retaliation under either the direct or indirect method.  *Nichols v. S. Ill. Univ.–Edwardsville*, 510 F.3d 772, 785 (7th Cir. 2007).

Under the direct method, Plaintiff must show that (1) she engaged in protected activity; (2) she suffered an adverse employment action by Defendant; and (3) a causal connection between the two events.  *Id.*  Plaintiff engaged in a protected activity when she filed an EEOC charge in May 2009.  Dkt. No. 9-1; *see Worth v. Tyer*, 276 F.3d 249, 265 (7th Cir. 2001).  In addition, the parties agree that, if true, denial of overtime and LOWs constitutes an adverse employment action.  Plaintiff seeks to prove the requisite causal connection with close temporal proximity.  However, "while there is no bright-line rule as to the amount of evidence necessary to survive summary judgment under the direct method . . . it is clear that mere temporal proximity is not enough[.]" *Tomanovich v. City of Indianapolis*, 457 F.3d 656, 665 (7th Cir. 2006).  Plaintiff does not point to any evidence apart from temporal proximity to make the required causal connection.  *See* dkt. no. 43 at 19 ("This close temporal proximity is, on its face and without more, evidence of a causal link[.]").  The Court concludes that temporal proximity is insufficient to establish a causal connection, and Plaintiff's retaliation claim fails under the direct method.

---

[5]  Although the ADA similarly prohibits retaliation, Plaintiff's Complaint charges retaliation under Title VII, *see* dkt. no. 1 ¶¶ 43–49, so the Court addresses retaliation under the that framework.

However, Plaintiff still may survive summary judgment if she satisfies the requirements of the indirect method, under which Plaintiff must show that (1) she engaged in protected activity; (2) she met Defendant's legitimate expectations; (3) she suffered an adverse employment action; and (4) she was treated less favorably than similarly-situated employees who did not engage in protected activity. *Nichols*, 510 F.3d at 785. If Plaintiff meets the prima facie case under this standard, Defendant must come forward with a non-discriminatory reason for the adverse employment action, which Plaintiff then must show to be pretextual. *Atanus v. Perry*, 520 F.3d 662, 672 (7th Cir. 2008).

For Plaintiff, the primary issue in the indirect method is whether she can show less favorable treatment than similarly situated employees. Plaintiff contends, without any further detail, that all other QCIs in the Bloomington Plant are similarly situated employees. *See* dkt. no. 43 at 20. Generally, the similarly situated analysis requires that the employee show that the comparator had the same supervisor, was subject to the same employment standards, and had engaged in conduct similar to that of the employee. *South v. Ill. Envtl. Prot. Agency*, 495 F.3d 747, 752 (7th Cir. 2007). The evidence in this case shows that no other QCIs worked in Plaintiff's cost center or had the same supervisor as Plaintiff. Majors Dep. Ex. 31. Plaintiff makes no argument suggesting "sufficient commonalities" with any other QCI at the Bloomington Plant apart from the job title. *See Humphries v. CBOCS W., Inc.*, 474 F.3d 387, 405 (7th Cir. 2007). Although the Court takes all evidence on summary judgment in the light most favorable to Plaintiff, the non-moving party, *see Estate of Cole*, 94 F.3d at 257, Plaintiff bears the burden of bringing forth some evidence supporting her contentions. *See Bombard*, 92 F.3d at 562. Having failed to do so, the Court concludes

18

that Plaintiff has not shown the required elements of her prima facie case.[6]   The Court **GRANTS** Defendant summary judgment on Plaintiff's retaliation claim.

## D.  CONSTRUCTIVE DISCHARGE

Lastly, Defendant contends that it is entitled to summary judgment on Plaintiff's claim of constructive discharge.  *See generally* dkt. no. 39 at 27–30.  To prove constructive discharge, Plaintiff must show that her working conditions were "so intolerable that a reasonable person would have been compelled to resign."  *Rabinovitz v. Pena*, 89 F.3d 482, 489 (7th Cir. 1996).  The working conditions must have been intolerable because of unlawful discrimination.  *Drake v. Minn. Mining & Mfg. Co.*, 134 F.3d 878, 886 (7th Cir. 1998).

The record contains no evidence suggesting that Plaintiff's working conditions were intolerable as that term is defined in Seventh Circuit precedent.  For example, physical threats or assault have been held to be intolerable, while "unpleasant and even embarrassing" employer actions such as arbitrary reprimands, denial of flex-time requests, and occasional verbal harassment were not intolerable.  *See Simpson v. Borg-Warner Auto., Inc.*, 196 F.3d 873, 877 (7th Cir. 1999) (collecting cases).  There is no evidence that any physical threats were made or comparable actions were taken against Plaintiff.  While Plaintiff may have found Defendant's denial of PMA positions to her based on medical restrictions—warranted or not—in her record to be unpleasant or harassing, these actions are not severe enough to constitute intolerable working conditions as a matter of law and,

---

[6]  Once again, a pretext inquiry is unnecessary.  *Jones v. United Pac. R.R. Co.*, 302 F.3d 735, 741 (7th Cir. 2002).

therefore, no constructive discharge occurred.   Defendant is **GRANTED** summary judgment on this claim.

## IV.  CONCLUSION

For the reasons set forth herein, the Court **GRANTS** Defendant's Motion for Summary Judgment [Dkt. No. 38] in its entirety.  A separate judgment shall issue.

IT IS SO ORDERED this 16th day of July, 2012.

LARRY J. McKINNEY, JUDGE
United States District Court
Southern District of Indiana

Distribution to:

Ebony Andrea Reid
OGLETREE, DEAKINS, NASH, SMOAK & STEWART
ebony.reid@ogletreedeakins.com

Steven Sams
STEVEN SAMS, P.C.
stevensamslaw@att.net

Kenneth B. Siepman
OGLETREE, DEAKINS, NASH, SMOAK & STEWART
kenneth.siepman@odnss.com